IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AARON BELL : CIVIL ACTION
:
v. : No. 17-912
:
WILLIAM SULLIVAN, et al. :

**MEMORANDUM**

**Juan R. Sánchez, J.**                                             **November 16, 2017**

Pro se Plaintiff Aaron Bell brings claims pursuant to 42 U.S.C. § 1983 and state law against the City of Philadelphia, Electricians, Inc.,[1] William Sullivan, and Michael Miller, Esq. arising out of the allegedly improper issuance of citations to Bell by the Philadelphia Department for Licenses and Inspections (L&I) for property violations. Defendants City of Philadelphia, Michael Miller, and William Sullivan have moved to dismiss the Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' Motion to Dismiss for Failure to State a Claim will be granted in part and denied in part.

**BACKGROUND**[2]

In November 2016, Bell sued Defendant Electricians, Inc. and Martin Morley in Philadelphia Municipal Court for breach of contract stemming from their electrical service work

---

[1] On October 26, 2017, the Clerk of Court entered default against Electricians, Inc. On November 1, 2017, the Court denied without prejudice Bell's Motion for Entry of Default Judgment Pursuant to Rule 55(b) due to the "danger of logically inconsistent determinations as to liability of the non-defaulting defendant[] on the one hand, and defaulting defendant[] on the other hand." Order (Nov. 1, 2017), ECF No. 22 (quoting *Stout St. Funding LLC v. Johnson*, 873 F. Supp. 2d 632, 649 (E.D. Pa. 2012)).

[2] The following facts are drawn from the Complaint, the allegations of which the Court accepts as true for purposes of deciding the instant motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding a court considering a Rule 12(b)(6) motion to dismiss should "assume the[] veracity" of the complaint's "well-pleaded factual allegations").

performed on Bell's property—a duplex. Morley subsequently threatened Bell that he and his friends who worked for L&I would retaliate against Bell "by drowning [him] in bogus L&I citations if [he] did not withdraw his . . . lawsuit." 2d Am. Compl. ¶ 11 (internal quotation marks omitted). Bell refused to withdraw the lawsuit, and on January 10, 2017, Morley again threatened Bell that his friends at L&I had "surprises coming [Bell's] way." *Id.* ¶ 12.

On February 21, 2017, Bell learned from the municipal court judge in his lawsuit against Electricians, Inc. that, on January 17, 2017—one week after Morley had threatened Bell—Defendant Sullivan, an L&I code enforcer, had issued him multiple citations for illegally converting his property into a duplex. The previous owner of the duplex, however, had lawfully converted the property with the City's permission in 1953, and Bell has made no structural changes to the property since taking ownership. Between February 21 and 23, 2017, Bell repeatedly requested that Sullivan provide him copies of and withdraw the citations. Sullivan refused, requiring Bell to prove the property was not unlawfully converted into a duplex. The City's L&I office personnel also refused to provide Bell with copies of the citations.

On February 28, 2017, Bell commenced this action under 42 U.S.C. § 1983, alleging Sullivan (1) unlawfully retaliated against him in violation of the First Amendment; (2) violated his substantive and procedural due process rights; (3) violated his equal protection rights; and (4) Sullivan conspired with Electricians, Inc. to violate his constitutional rights.[3] Bell also alleged

---

[3] During a May 24, 2017, oral argument, the Government stated—and Bell did not dispute—that L&I issued Bell three citations for building a duplex without the necessary permits on or around January 19, 2017, but that approximately six weeks later, on March 7, 2017, L&I withdrew the citations. Bell admits the citations, now withdrawn, have no impact on the value of his property. Nevertheless, Bell maintains L&I withdrew the citations one week after he filed the instant federal lawsuit, demonstrating that only the threat of litigating this lawsuit prompted L&I to withdraw the citations. Bell therefore contends his harm lies in having to file this lawsuit in order to force L&I to withdraw the citations that were unwarranted from the time of their issuance.

the City of Philadelphia has adopted and promulgated a pattern, practice, and policy pertaining to L&I's issuance of citations in violation of *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Defendants filed a motion to dismiss, in which the City's attorney, Michael R. Miller, stated Bell "has [a] history of committing questionable conduct in litigation," Defs.' Memo. in Supp. of Mot. to Dismiss 3, adding in a footnote:

> "In *Bell v. O'Connor*, No. 12-2625 (E.D. Pa.), two of the most respected civil rights attorneys in Philadelphia moved to withdraw as Plaintiff's counsel. Judge Dalzell granted their motion to withdraw after finding 'counsel's concerns . . . well-founded' that Plaintiff was attempting to use their services to commit 'criminal or fraudulent' conduct." *See O'Connor*, No. 12-2625, Docket No. 38 at page 1; *see also* Pa. R. Prof'l Conduct 1.16(b)(2).

*Id.* at 3 n.1. Bell then filed a First Amended Complaint, adding a defamation claim and a First Amendment retaliation claim against Miller based on the allegedly false statements in the motion, and adding a defamation claim against Sullivan for communicating the statements through Miller, his attorney. After Defendants filed a second motion to dismiss, Bell, without leave from this Court, amended his Complaint a second time, adding a second *Monell* claim against the City based on its alleged ratification or adoption of the alleged defamatory statements in the motion to dismiss. Defendants filed a third motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)—the instant motion before the Court.

**DISCUSSION**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and

3

factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Because Bell proceeds pro se, the Court construes his pleadings liberally and "will apply the applicable law, irrespective of whether [he] has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

### A. First Amendment Retaliation

Bell contends Sullivan retaliated against him for instituting the state lawsuit against Electricians, Inc. and Morley by issuing him citations Sullivan knew to be baseless, in violation of the First Amendment. Defendants argue the retaliation claim fails because Bell failed to plead Sullivan knew about Bell's lawsuit when he issued the citations, or that Sullivan had any connection to Morley.

In order to plead a First Amendment retaliation claim, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising h[is] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Leibert v. Phila. Hous. Auth.*, 474 F. App'x 76, 78–79 (3d Cir. 2012) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). As to the third prong, to establish the requisite causal connection a plaintiff must allege either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex. rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *see Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) (describing the "causal link" as

"but for" causation); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) ("[T]he timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred."). Further, to establish a causal connection, a plaintiff must allege the defendant was aware of the protected conduct. *Hammond v. City of Wilkes Barre*, 628 F. App'x 806, 807 (3d Cir. 2015).

Bell has sufficiently asserted a First Amendment retaliation claim against Sullivan. First, the filing of the lawsuit against Morley in state court constituted a constitutionally protected right. *See BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002) ("[T]he right of access to the courts is . . . but one aspect of the right of petition." (ellipses in original) (citation omitted)). Second, because Bell alleges Sullivan issued the citations against him at the request of Morley, and the citations had no legal basis and were withdrawn soon after Bell filed the instant federal lawsuit, the Court finds Bell has sufficiently alleged retaliatory action. *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (noting the effect of the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than *de minimis*" (citation and internal quotation marks omitted)); *Lease v. Fishel*, No. 07-0003, 2011 WL 381656, at *5 (M.D. Pa. Jan. 28, 2011) (holding plaintiff's allegations that township and building inspectors retaliated against him for his successful land development litigation against township through unauthorized zoning inspections and the filing of a petition against plaintiff with the state court for zoning violations were "substantial enough to be more than de minimis" and therefore survived defendants' motion to dismiss).

Finally, Bell has sufficiently plead a causal link between the filing of his lawsuit and the issuance of the citations. The passage of one week between Morley's threats and Sullivan's issuance of citations, as well as L&I's withdrawal of the citations one week after Bell filed the

instant federal lawsuit, is unusually suggestive of retaliatory motive. *See Hammond*, 628 F. App'x at 808 (noting "two weeks may be close enough temporally to be probative of causation"); *cf. Thomas*, 351 F.3d at 114 (finding the passage of three weeks between a complaint being filed and retaliatory conduct does not unusually suggest retaliatory motive); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (holding the ten day period between the protected activity and retaliatory conduct, combined with other evidence of wrongdoing, established causation); *Lease*, 2011 WL 381656, at *5 (finding that although the four to six months between the protected activity—successfully litigating a land development dispute against the township—and the alleged retaliatory action—the issuance of zoning violations—was not unusually suggestive by itself, coupled with allegations of a pattern of antagonism, plaintiff had established a causal link). Further, because Bell alleged Morley threatened that his friends at L&I would "drown" Bell in citations, and Sullivan is an L&I inspector, it is reasonable to infer Sullivan was motivated to issue the citations to assist his friend. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]t least where the First Amendment is concerned, the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual.").

Defendants argue the Court cannot make the assumption that Sullivan was aware of the state lawsuit against Electricians, Inc. and Morley because Bell failed to allege facts connecting Morley and Sullivan. The Court, however, need only reasonably infer from Morley's threats to Bell and the close temporal proximity between those threats and the citations issued by Sullivan—withdrawn immediately after the filing of this lawsuit—that Sullivan was indeed

aware of the underlying lawsuit and issued the citations upon Morley's request.[4] *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) (noting that to sufficiently plead causation, a plaintiff must provide "supporting facts that make it reasonable to draw an inference of retaliation"); *Fowler*, 578 F.3d at 211 (noting a complaint must "permit the court to infer more than the mere possibility of misconduct"). Bell's retaliation claim against Sullivan therefore survives.

Bell also alleges Miller retaliated against him by publishing a deliberately false and defamatory statement in the first motion to dismiss. Bell contends the statement "embellishes an obvious typo made by Judge Dalzell," who, by Order dated November 26, 2013, permitted Bell's attorneys in a previous federal matter to withdraw their representation pursuant to Pennsylvania Rule of Professional Conduct 1.16(b)(2), when in fact the attorneys sought to withdraw due to disagreements in how to proceed in the litigation. 2d Am. Compl. ¶¶ 28-30; *see* Pa. R. Prof'l Conduct 1.16(b)(2) (providing that "a lawyer may withdraw from representing a client if . . . the client persists in a course of action involving the lawyer's services that they lawyer reasonably believes is criminal or fraudulent"). Indeed, the district court, citing Rule 1.16(b)(2), found that "counsel's concerns [were] well-founded . . . and . . . outweigh[ed] the Court's need to ensure effective court administration," but made no mention of criminal or fraudulent conduct. *Bell v. City of Phila.*, No. 12-2625, Order (E.D. Pa. Nov. 26, 2013). In an April 3, 2017, email, one of Bell's attorneys in that matter confirmed for Bell that the court had permitted him to withdraw

---

[4] Defendants argue *Leibert v. Phila. Housing Auth.*, 474 F. App'x 76 (3d Cir. 2012) is on all fours with the instant case. In *Leibert*, however, the plaintiff failed to plead *any* facts that would have supported an inference that the defendants were involved with the adverse action or aware of the protected activity. The Third Circuit found that because the plaintiff failed to plead a causal connection between her protected speech and the alleged retaliatory conduct, it could not "infer more than the mere possibility of misconduct." *Leibert*, 474 F. App'x at 79. In contrast, Bell's allegations raise more than the mere possibility of misconduct, as Bell's well-pleaded facts connect the state lawsuit, Morley's threats, and Sullivan's issuance of citations within a short period of time.

his representation "due to fundamental differences in the conduct of the upcoming trial." 2d Am. Compl. Ex. 2. Miller's statement is therefore slightly misleading, as the district court cited Rule 1.16(b)(2), arguably mistakenly, but did not itself state that Bell had attempted to use his attorneys' services to commit criminal or fraudulent conduct.

Nevertheless, Bell provides no reason to believe Miller was aware of the possible citation error, and Miller's statement alone does not constitute sufficient retaliatory action to make out a First Amendment retaliation claim. *See Leibert*, 474 F. App'x at 79; *Collura v. Disciplinary Bd. of Sup. Ct. of Pa.*, No. 11-5637, 2013 WL 4479141, at *5 (E.D. Aug. 22, 2013) (finding attorney's allegedly false statements in the course of litigation that plaintiff had been convicted of harassment, where each time plaintiff "had the opportunity to, and did, correct the avowed misstatement," did not rise to the level of a constitutional violation). Moreover, Bell has failed to allege a causal link between his protected activity of "seek[ing] redress through the courts," 2d Am. Compl. ¶ 63, and Miller's statement, *see Ober v. Brown*, 105 F. App'x 345, 347 (3d Cir. 2004) (finding plaintiff's allegations of defendant-attorneys' misconduct failed to state a First Amendment retaliation claim, as plaintiff failed to provide "any factual or legal support for his contention that the alleged actions the attorneys and their investigator took were retaliation against him for his filing a lawsuit, as opposed to the actions merely taken for the purpose of defending a lawsuit"); *Collura*, 2013 WL 4479141, at *6 (finding plaintiff failed to sufficiently plead facts that would suggest defendant's "misstatements, even if intentional and distasteful, were anything other than actions taken in the normal course of defending a lawsuit"). Bell's retaliation claim against Miller is therefore dismissed.[5]

---

[5] Defendants argue Miller is entitled to immunity from the retaliation claim based on Pennsylvania's litigation privilege. The Third Circuit Court of Appeals, however, has not fully addressed whether the litigation privilege applies to bar claims under § 1983. *See Spuck v. Pa.*

8

## B. Civil Conspiracy

Bell next contends Sullivan conspired against him by agreeing with Morley and Electricians, Inc. to retaliate against Bell by issuing him the "false" citations. Defendants argue Bell fails to plead facts which plausibly suggest that Sullivan and Morley entered into a conspiratorial agreement, or any other facts that suggest an existing relationship between the two men.

To state a conspiracy claim under § 1983, a plaintiff must allege "(1) the existence of a conspiracy involving state action; and (2) a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Cash v. Wetzel*, 8 F. Supp. 3d 644, 661 (E.D. Pa. 2014) (citing *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000)). A § 1983 conspiracy claim must demonstrate a "meeting of the minds." *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (internal quotation marks and citation omitted). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989); *see Capogrosso v. The Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) ("[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."). Thus, to properly plead a

---

*Bd. of Prob. & Parole*, 563 F. App'x 156, 158 (3d Cir. 2014) ("[W]e discern no error with the [d]istrict [c]ourt's conclusion that a state agency attorney should be afforded [immunity] from liability in damages when carrying out courtroom functions."); *Collura*, 2013 WL 4479141, at *5 n.6 (noting that whether the litigation privilege "applies to bar federal claims under § 1983 is not settled and has not been addressed by the Third Circuit Court of Appeals"); *but see Wallace v. Abell*, No. 07-4918, 2008 WL 2833927, at *3 (E.D. Pa. July 22, 2008) (holding government attorneys' conduct, having arisen in the context of defending government clients, was "protected by the judicial privilege and absolute immunity"). Because the Court dismisses Bell's retaliation claim against Miller on other grounds, it need not decide whether Miller is entitled to the litigation privilege with respect to this claim.

conspiracy, "a plaintiff must assert facts from which a conspiratorial agreement can be inferred," such that there exists "enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Bell has asserted sufficient facts from which a conspiratorial agreement can be inferred, as he alleges that "Sullivan agreed with Martin Morley and Defendant Elec., Inc., and did act in furtherance of this conspiracy, to retaliate against [Bell] by issuing him deliberately false citations. . . ." 2d Am. Compl. ¶ 39. He provides the period of conspiracy—the time between Morley's threats and the issuance of the citations—and the object of conspiracy—retaliation against Bell for refusing to withdraw his lawsuit against Morley—in addition to facts concerning Morley's threats and Sullivan's issuance of citations thereafter. These allegations plausibly suggest an agreement between and concerted action by Sullivan and Morley to deprive Bell of his constitutional rights. *See Lease*, 2011 WL 381656, at *7 (holding plaintiff sufficiently plead civil conspiracy claim by alleging defendant-inspectors returned to his property to measure for zoning violations and caused the township to seek the imposition of a fine by the state court). The Court therefore finds Bell has sufficiently alleged a conspiracy claim against Sullivan to withstand Defendants' motion to dismiss.

**C. Due Process**

Bell next alleges Sullivan violated his Fourteenth Amendment substantive and procedural due process rights. Defendants argue Bell's due process claims fail because Bell has failed to plead that he suffered a deprivation of a protected interest. The Court agrees.

The Fourteenth Amendment "prohibits state deprivations of life, liberty, or property without due process of law." *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984). To make out a substantive due process claim under § 1983, a plaintiff must show "(1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience." *Connection Training Servs. v. City of Phila.*, 358 F. App'x 315, 319 (3d Cir. 2009). The interest at issue therefore must be a "fundamental" property interest under the Constitution. *Id.*; *see Nicholas v. Penn. State Univ.*, 227 F.3d 133, 140-41 (3d Cir. 2000) ("To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." (internal quotation marks omitted)). If the interest is fundamental, the court "must then consider whether the conduct was arbitrary or irrational," i.e., conduct that "shocks the conscience." *Id.* "Only the most egregious official conduct" will be considered conscience-shocking. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003) (internal quotation marks omitted) (quoting *Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Where the interest is not fundamental, however, "there is no substantive due process issue and the state conduct will be upheld so long as the state complies with procedural due process." *Connection Training Servs.*, 358 F. App'x at 319.

Bell's substantive due process claim fails because he has failed to allege that the issuance of the citations deprived him of his property. An individual's ownership of real property constitutes an interest protected by substantive due process. *See Grimm v. Sweeney*, 249 F. Supp. 2d 571, 608 (E.D. Pa. 2003) ("Ownership in and use and enjoyment of property are interests protected by substantive due process." (citing *DeBlasio v. Zoning Bd. of Adjustment*, 53

F.3d 592, 600–01 (3d. Cir. 1995), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003))). Here, Bell alleges the "false citations have subjected [him] to substantial municipal fines," and "have prevented [him] from selling [his property]." 2d Am. Compl. ¶¶ 20-21. At oral argument, however, Bell admitted he never paid the citations and that the citations, now withdrawn, have no impact on the value of his property. Bell has therefore failed to allege any deprivation of his ownership or use of his duplex.

Bell has also failed to allege Sullivan engaged in "conscious-shocking" behavior. *See United Artists*, 316 F.3d at 394 ("Land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with improper motives." (internal quotation marks omitted)); *cf. Vasquez v. City of Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985) (holding plaintiff failed to allege substantive due process claim relating to an officer's issuance of two parking tickets in bad faith, as the officer's conduct, although "reprehensible," was "not that type of conduct which so shocks the conscience that it violates appellant's substantive due process rights"); *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 261-62 (E.D. Pa. 2007) (finding plaintiff adequately plead substantive due process claim that alleged defendants—the borough, its council, and certain public officials—"made various false statements to state agencies and the public, breached the terms of contracts, and passed an alleged unconstitutional amendment all in an attempt to deter [plaintiff] in the use of its property"). Bell's substantive due process claim is therefore dismissed.

To state a § 1983 procedural due process claim, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's

protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (internal quotation marks omitted). Bell must therefore allege "that state actors deprived him of property to which he had a legitimate claim of entitlement without the process he deserved." *Gale v. Storti*, 608 F. Supp. 2d 629, 634 (E.D. Pa. 2009) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

Bell's procedural due process claim is equally infirm. Bell argues the issuance of the citations without notice prevented him from his right to pursue his administrative remedies within the City's 30-day appeal period for L&I citations. Nevertheless, any denial of process does not constitute a procedural due process claim without the deprivation of a protected interest. This claim is dismissed.

### D. Equal Protection

In support of his equal protection claim, Bell alleges only that Sullivan "discriminated against [him] because Sullivan failed to issue any citations to the owners of the duplex property that is located close to [Bell's] [d]uplex." 2d Am. Compl. ¶ 23. Bell appears to bring a "class of one" equal protection claim, for which he "must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). To be "similarly situated" under the Equal Protection Clause, persons must be "alike in all relevant aspects." *Startzell*, 533 F.3d at 203 (internal quotation mark and citations omitted).

Here, Bell has failed to plead any facts that would allow the Court to infer purposeful discrimination or differential treatment. Bell has also failed to allege the owners of the

13

neighboring duplex are "alike in all relevant aspects." Bell's equal protection claim is therefore dismissed.

### E. Abuse of Process

Bell next alleges Sullivan's issuance of "deliberately false citations" in retaliation for failing to withdraw the state lawsuit constituted an abuse of process. 2d Am. Compl. ¶ 51. Under Pennsylvania law, a plaintiff may bring two types of abuse of process claims: "(1) a statutory claim for wrongful use of civil proceedings/malicious use of process,"[6] i.e., a Dragonetti Act claim; and "(2) a common law claim for abuse of process." *Gordian Med., Inc. v. Gentell, Inc.*, No. 12-5582, 2013 WL 4457363, at *1 (E.D. Pa. Aug. 21, 2013) (citing 42 Pa. Cons. Stat. Ann. § 8351).

Bell's allegations suggest that he brings a common law abuse of process claim. *See* 2d Am. Compl. ¶ 51. "[T]he gist of an action for [common law] abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (quoting *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987)). Because Bell alleges Sullivan issued him the citations "primarily to accomplish [an] unlawful purpose," 2d Am. Compl. ¶ 51, however, his claim pertains to the wrongful initiation of civil process and would be better characterized as a malicious use of process claim. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002) ("Malicious use has to do with the wrongful initiation of civil process, as contrasted with abuse, which is concerned with perversion of process after litigation has begun." (citing *Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila.*, 154 A.2d 585, 587 (Pa. 1959)));

---

[6] Courts use "wrongful use of civil proceedings" and "malicious use of process" interchangeably. *See Gordian Med., Inc.*, 2013 WL 4457363, at *1; *Zappala v. Hub Foods, Inc.*, 683 F. Supp. 127, 129-30 (W.D. Pa. 1988); *Linker v. Custom-Bilt Mach. Inc.*, 594 F. Supp. 894, 902 n.2 (E.D. Pa. 1984).

*Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992) ("Malicious use of civil process has to do with the wrongful *initiation* of such process, while abuse of civil process is concerned with a perversion of a process *after* it has been issued." (emphasis in original) (quoting *McGee*, 535 A.2d at 1023)). His common law abuse of process claim therefore fails.

Even construing the claim liberally as a malicious use of civil process claim does not save it from dismissal. In Pennsylvania, the tort of malicious use of process "has been codified and modified by the Dragonetti Act." *U.S. ex rel. Magid v. Wilderman*, No. 96-4346, 2005 WL 469590, at *2 (E.D. Pa. Feb. 28, 2005). To state a claim for wrongful use of civil proceedings, "a party must prove that: (1) the underlying proceedings terminated in his or her favor; (2) the defendant caused those proceedings to be instituted without probable cause; and (3) the proceedings were instituted for an improper purpose." *Id.* (citing *Bannar v. Miller*, 701 A.2d 242, 247 (Pa. Super. Ct. 1997). The term "civil proceeding" implicates only matters involving adjudication of claims. *See* 42 Pa. Cons. Stat. Ann. § 8351(a) (providing a person is subject to liability where "he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based"); *see also Pellegrino Food Prod. Co. v. City of Warren*, 136 F. Supp. 2d 391, 406 (W.D. Pa. 2000) (noting the "term 'process' has been interpreted in Pennsylvania to encompass all of the procedures incident to the litigation process, including discovery proceedings, the noticing of depositions and the issuing of subpoenas" (citing *Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993))). Here, the issuance of citations does not qualify as a "civil proceeding" for purposes of a malicious use of process claim. *See Grimm v. Borough of Norristown*, 226 F. Supp. 2d 606, 655 (E.D. Pa. 2002), (holding plaintiffs' abuse of process claim failed, as defendants' issuance of citations due to

alleged building code violations "were not declarations, petitions or applications made to a court" and therefore did not qualify as civil proceedings or use of the litigation process for purposes of the Dragonetti Act (citing *Pellegrino Food Prods. Co.*, 136 F. Supp. 2d at 406)). This claim is dismissed.

### F. Defamation

Bell next asserts a defamation claim against both Sullivan and Miller based on Miller's statement regarding Bell's past litigation conduct in Defendants' motion to dismiss. To state a claim for defamation under Pennsylvania law, a plaintiff must allege "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; (5) an understanding by the reader or listener of an intent by the defendant that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged position." *Pennoyer v. Marriott Hotel Servs., Inc.*, 324 F. Supp. 2d 614, 618 (E.D. Pa. 2004) (citing 42 Pa. Cons. Stat. § 8343(a) (1988)). "A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (internal quotation marks omitted). Substantial truth is a complete defense to a defamation claim. *Pacitti v. Durr*, 310 F. App'x 526, 528 (3d Cir. 2009).

Defendants argue the defamation claims must be dismissed based on Pennsylvania's litigation privilege. In Pennsylvania, "statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 246–47 (E.D. Pa. 2012) (quoting *Pawlowski v. Smorto*, 588

16

A.2d 36, 41 (Pa. Super. Ct. 1991)). For the litigation privilege to apply, an attorney's communication must have been "(1) issued as a matter of regular course of the proceedings; [and] (2) pertinent and material to the proceedings." *Id.* at 247 (alteration in original) (quoting *Bochetto v. Gibson*, 860 A.2d 67, 73 (Pa. 2004)). Bell argues Miller's statement was not pertinent or material to the relief sought. Nevertheless, Bell's defamation claim is premised solely on a filing submitted by Miller in his capacity as counsel for Defendants during the regular course of judicial proceedings, and Defendants believed the statement to be relevant to Bell's "truthfulness and credibility." Defs.' Memo. in Supp. of Mot. to Dismiss 14. Construing the litigation privilege broadly, as it must, the Court finds Miller is protected by the litigation privilege. *See Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 580 (M.D. Pa. 2015) ("Any doubt as to whether the defamatory statement was actually 'pertinent and material to the redress or relief sought' must be resolved in favor of pertinency and materiality." (citing *Richmond v. McHale,* 35 A.3d 779, 785 (Pa. Super. Ct. 2012)), *amended in part*, No. 11-1679, 2015 WL 999101 (M.D. Pa. Mar. 6, 2015), *and aff'd*, 834 F.3d 457 (3d Cir. 2016); *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 477 (E.D. Pa. 2010) (noting that the litigation privilege in Pennsylvania "has generally been a fairly broad grant immunity"); *Wolk v. Teledyne Indus., Inc.*, 475 F. Supp. 2d 491, 509 (E.D. Pa. 2007) (finding absolute privilege protected attorneys' transmission of a "valid and publicly available court order" containing allegedly defamatory statements to their client's insurer, even if the lawyer "knew that it contained erroneous, false, and even defamatory statements," as the remedy available to the defamed party would have been an appeal of the injurious judicial order).

Even if Miller were not immune from liability, Bell's defamation claim fails because Miller's statement was actually true. Although Bell argues Miller was "acutely" aware that there

were no allegations of any "criminal or fraudulent conduct" in *Bell v. O'Connor*, 2d Am. Compl. ¶ 30, Miller accurately quoted the district court's order and the language of the rule cited by the court. Bell's defamation claim also fails because Bell has failed to allege any special harm he experienced as a result of the statement's publication. *See Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007) ("As for the special harm requirement, a plaintiff must plead a specific monetary or out-of-pocket loss as a result of the defamation." (internal quotation mark omitted)); *Clemente v. Espinosa*, 749 F. Supp. 672, 680 (E.D. Pa. 1990) (noting Pennsylvania courts define "special harm" as "actual and concrete damages capable of being estimated in money").

Finally, to the extent the alleged defamatory statements may be attributable to Sullivan, Bell's defamation claim against Sullivan is dismissed for the same reasons as his defamation claim against Miller. *See Schatzberg*, 877 F. Supp. at 246-47.

### G. *Monell*

Lastly, Bell alleges the City has adopted an unwritten pattern or practice of authorizing its L&I code enforcers to issue citations without providing notice, and that the City has "promulgated an official policy" authorizing L&I code enforcers to issue unsupported citations, in violation of the Due Process Clause. 2d Am. Compl. ¶¶ 55-56. Bell also alleges the "City's policymakers have ratified or adopted Defendant Miller's publishing of deliberately false and defamatory statements about [Bell] as retaliation for [his] exercising his right to seek redress through the courts, in violation of the First Amendment." *Id.* ¶ 57.

A municipality may not be held liable under § 1983 based solely on the conduct of its employees. *See Monell*, 436 U.S. at 691. Rather, when "a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression

18

implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009). The plaintiff must specifically identify the custom or policy, and establish that the deprivation of constitutional rights was the result of that custom or policy. *See Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *McTernan*, 564 F.3d at 658. Thus, a "successful *Monell* claim must . . . establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom." *See Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016). A government's policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict," whereas a custom is made when "state officials [are] so permanent and well-settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (alterations in original) (internal quotation marks omitted). Under both instances, a plaintiff must also allege conduct by a municipal decisionmaker and his or her connection to the challenged policy or custom in order to adequately plead an official policy or custom "warranting the imposition of municipal liability." *McTernan*, 564 F.3d at 658-59 (internal quotation mark omitted); *see Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990) ("[A] plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.").

Bell's *Monell* claims fail for several reasons. First, because Bell's due process claims against Sullivan based on the issuance of unsupported citations and retaliation claim against Miller fail, Bell has failed to adequately allege the requisite underlying constitutional violation to support his *Monell* claims. Second, Bell fails to provide sufficient factual detail concerning

specific policies or customs, and the relevant decision-maker, relating to L&I's issuance of citations or the City's adoption of Miller's statement. *See McTernan*, 564 F.3d at 658-59 (finding plaintiff's failure to allege conduct by a municipal decisionmaker was fatal to his *Monell* claim); *Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) ("The amended complaint lacks any specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom endorsing the police officers' conduct." (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). Bell's *Monell* claims are therefore dismissed.

For the reasons set forth above, Defendants' Motion to Dismiss the Second Amended Complaint is granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, J.